Counsel, you may proceed. Thank you, Your Honor. Good morning. May it please the court, my name is Jeff Cahan. I'm representing the Timbisha Shoshone Tribe and eight individual Timbisha citizens. With me at council table is George Foreman and our clients were not able to be here today, but we hope that they are. It wasn't necessary for them to come. We will treat them. You're representing the Kennedy group, is that right? Yes, we represent Angie Boland, Joseph Kennedy, Grace Goad. Yes, I know. I just, in my mind, I used the Kennedy group. Yes, that's commonly what they're called, yes. Well, counsel, why isn't this case moot? Well, the two grounds for which the United States and the Bishop Council claim that this case is moot are the passage of time and further elections carried out in Bishop and the adoption or the purported adoption of a new Timbisha constitution. Well, we've had three elections since the election at issue in this case. Yes, but the, our... There's no way in the world, regardless of what we do, that we're going to affect that first election. Well, thank you for pointing that out, Judge Scanlon. We are not asking for a repeal of that election. What we are asking for is a new recognition decision. We are asking for the Department of the Interior to go back and decide this case again based upon proper procedure – based upon its proper administrative procedures. What difference would that make? Well, your problem, of course, is not with that, but with what Larry Echo-Hawk said. But that's what you're really after. I don't see how you can go back and undo that one. Well, Larry Echo-Hawk undid four or five years' worth of tribal elections by ignoring them. And so he can, his replacement can do the same at this point. Yeah, I see. From 2006 through 2011, there were a series of tribal elections held by the Death Valley Tribal Council, which was the council recognized by the government. Even after the government supposedly did not recognize them, it continued to fund that tribal council, continued to enter into 638 contracts with that tribal council. These are things that only – these are funds and contracts that can only be entered into by Indian tribes. And so, in effect, the tribe – the Death Valley Tribal Council was carrying out the activities of the tribe as recognized by the federal government through mid-2010. Nonetheless, when Larry Echo-Hawk made his decision in 2011, he looked solely at the question of whether one person or two people could be removed from a tribal council, and then whether the fact that they missed out on the last four months of their terms on the tribal council, whether that was then the poisonous tree, and that this – the – every election after that was the fruit of the poisonous tree that he could simply disregard. And he did – among other things, that's why the decision that he made was arbitrary and capricious, because he completely ignored relevant questions, relevant facts on the record before him. And, as we have pointed out, he also, when he made the Echo – first Echo-Hawk decision, he added things into the decision, relied upon them that weren't in the record, events that had happened over a year after the record had closed, and did not give any opportunity to the parties – at that point, there was only one party, which was our clients – to brief the matter, to address what – his one-sided view of things. So the documents that he was given, we would – we would ask that we have the opportunity to rebut those, and, because of the passage of time, we would ask that we be able to – you know, we would ask, if we were back at the Department of the Interior, we would ask the replacement for Kevin Washburn, when he comes on board, or she comes on board, to look at what has happened since then, to look at the totality of events, allow us to brief that, as we were not allowed to do at any time during 2010-2011, so that – Even if – even if you're successful on that point, we still have the issue of the new constitution, which sort of sets up a new program, actually, for the tribe. I'm not sure that issue is before us. In your reply brief, the Gray brief, you indicate that the validity of the new constitution is not at issue in this case. It seems to me that, as – you've taken the position in – as far as your clients are concerned, that that is not an issue that we need to deal with. That is the validity, but the constitution itself is still an issue. So if you're not taking a position that the – that it is an invalid constitution, why doesn't that seal off your problem, the difficulty here, as far as, even though you have an argument on the others, this constitution seems to me to almost make this a moot case? Your Honor, if we, in fact, stated in the reply brief that it was not an issue, that the validity was not at issue – You want me to read it to you? Well, no, that's fine. I would just like to correct that at this point. We do not believe that the constitution is valid, but the facts of the constitution are not before this Court. It does not have the – and it can't simply state that, based upon the word of the United States, based upon the word of one of the interested parties in this case, that a new constitution moots everything. It's not a fact of nature. This is a constitution adopted at the behest of the tribal council that we claim is not legitimate. If the tribal council was not legitimate, the vote was not legitimate, it's the same sort of unwinding that Larry Echo Hawk did in his 2011 election can also be done to the constitution. And if we are not successful here today, that's – it's entirely our expectation that the next fight will be over the constitution. But it is not a valid constitution. Even if it were valid, however, it doesn't affect the mootness of this case, because, among other things – Yes, this is the issue I wanted you to argue, because it's a little hard to change your strategy at this level – at this level. But why – if it is a valid constitution, why isn't this a moot case? Well, I don't – why isn't this a moot case because of the new constitution is because, among other things, the question is – it begs the same question, which is, you know, if the – if the constitution made the – George Golson and others new members of the tribe, that's admitting that they were not members of the tribe to begin with, and therefore could not serve on the tribal council, could not call for the election, could not vote in the election. If they were actually members of the tribe beforehand, then the constitution changes nothing. So that was – can you tell me, help me out, what difference would it have made now that events have changed and the positions of the parties have changed? Why would it be any different? Why would it be any different is because the Department of the Interior did not, one, supply a reasoned analysis of the evidence before it, and, two, because there are other facts that would be provided to the Department of the Interior. And the fact that the Department – But how would the outcome be any different? How would the outcome – You're talking about procedural changes. Yeah. How the outcome would be – And the government argues the case is moot because of the change. So – but how were you affected? How were your clients affected? Well, the – I take Your Honor to be asking about the effectiveness of relief, which the – this has serious implications for our clients, most of whom live in Death Valley itself, which is where the – where Congress established the reservation and where the tribe is from. But you're asking for declaratory and injunctive relief. Right. You're – the injunction, you're already in power. No, the – we are not asking for this Court or the district court to place anyone in power nor the Department of the Interior. This – the judge below, Judge England, the Department of the Interior, and the Bishop Council all premise their arguments on a misunderstanding of the relationship between Federal and tribal law. The Federal courts, the Federal government, has no ability to replace tribal governments. It has the ability to recognize them. And we are asking to go back, make the decision correctly, and, you know, perhaps we would win, perhaps we would lose, but at least we would have the procedural right, which is a real right, a real material right, and negates the mootness of this case – the alleged mootness of this case. The other issue we do need – I would like to reserve some time, so I'm going to wrap up this answer if you don't have more questions. The – as for the, you know, the question of how it would change things, the – prior to the Echo Hawk decisions, there was a group in Bishop that established itself in 2009 by holding a sui generis election. There was a group in Death Valley that had been holding elections over and over again, overlapping elections for the previous at least 20 years under the Constitution, and then prior to that under the Articles of – not Confederation, Association. And before that, by acclamation and so forth, this – and then with these two entities, one which we call a private entity in Bishop and one which we call the tribal government in Death Valley, the Department of the Interior said, okay, we're shifting from the Death Valley entity to the Bishop entity, and we're redirecting the funds. We're saying that given the opportunity to have a valid administrative procedure, we would be able to convince the Department of the Interior to then change its mind again. Thank you. Thank you. One question, Kels, before you leave. You are challenging the rollback rule. Is that what I understand? Among other things, yes. That's the – one of the things the Department of the Interior did during the chaos that it created from 2008 through 2011 was relying upon this rule which says that it will recognize the last un… Okay. But was that rule applied in this case? It was not – it was not applied in the 2011 decision, but it was the – one of the bases for that decision because of the chaos that that rule caused. The switching back and forth between elected tribal councils, switching back and forth led to… Well, then I worry about standing with respect to that narrow issue. Yes. Well, we believe we have standing because, among other things, this has happened many times before to this tribe. The Department of the Interior has gone back and forth between which councils it has chosen to recognize. I think the issue is whether you can show injury, and that's the real question, whether can it be to show the injury, yes. We'll hear from the government. Thank you, Your Honor. I'm Mary Gabrielle Sprague representing the Federal Defendants, and our plan is for me to speak for nine minutes and Mr. Berklin representing the Tribal Defendants to have six minutes. This suit challenging the Assistant Secretary's decisions in 2011 to resolve an impasse in our brief. The last – the November 2006 elected tribal council fractured in August of 2007. Whereas plaintiffs refer to the existing tribal government, the Death Valley tribal government as the tribal government, in fact, as of that August 2007 tribal council meeting, three members left the meeting, Mr. Kennedy and another member stayed, and that council never functioned again. Instead, two factions held separate elections in November 2007. Separate tribal councils were elected. They each had their own enrollment committees and their own election committees, and you had a dueling tribal government proceeding. Plaintiffs' council focuses on the January 2008 general council meeting. The general council is a meeting of all adult members of the tribe. And in their briefing, they completely ignore the August 2008 general council meeting, which then voted to recall Mr. Kennedy as a tribal council member. So the Department of the Interior was faced with this problem. With a civil war. With a civil war. And tried to – Secretary Egelhoff was in a position he was not going to be able to make any decision that was going to satisfy both parties. That's absolutely correct, Your Honor. And – And so the issue is, is the decision that he made effective under the circumstances or are they able to point out problems with it that required to roll back and start all over again? Correct, Your Honor. And I think that Assistant Secretary Egelhoff's decision will stand up for the reasons that have been briefed. The main argument of the plaintiffs is that the federal government should not, under any circumstances, interfere with tribal government. Well, is the Egelhoff decision as such at issue in this case? Yes, Your Honor. I mean, we view this case as an administrative, an APA challenge to the March 1, 2011 decision authorizing a special election and then the July 2011 decision accepting the results of that special council election. You mean it's an issue before us unless the whole issue is moot and we have no jurisdiction? We believe it is moot. That was what the lawsuit was about, yes. But we do believe it has become moot because there have been regular tribal council elections in November 11, November 12, 2012. By 2012, the terms of all of the five members in the April 2011 special election had expired. There were further elections in November 2013 and November 2014. So the current tribal council are members who were voted in in November 2013 and 2014. There was no challenge to those elections by the plaintiffs, nor does the Department of the Interior on itself observe any irregularity in those proceedings. The constitutional, the request for the constitutional election came from the November 2013 tribal council, which was the product of the November 2012 and November 2013 elections, not the special election. I understand. What's the position of the department as far as the new constitution is concerned as to whether that makes the entire issue moot? Your Honor, we did not move for, to dismiss the case as moot until a decision had been made on the new constitution because we were concerned that the elections in and of themselves would not, the tribal council elections in and of themselves would not have mooted the case because of the underlying membership dispute being considered potentially an issue capable of repetition yet evading review. So in our view, what sealed the deal and made this case moot was the Secretary's, Assistant Secretary's decision accepting the adoption of the new constitution in May 2014, which in our view does resolve any membership dispute from the April 2011 special election. Now the plaintiffs, I'm not sure if it's exactly these same plaintiffs, but Mr. Kennedy and some other tribal members did challenge, file an administrative appeal of the Assistant Secretary's May 2014 decision accepting the new constitution. That is, as we advised in that decision, a final decision, that is a challengeable final decision. They've made a number of challenges, including that people who in their view were not valid members shouldn't have been permitted to vote. The Assistant Secretary addressed that argument by pointing out that the 35 members who voted who the plaintiffs do not consider to be eligible members, even if you removed their votes, the adoption of the constitution still carried. I understand your argument then that you, you then believe the new constitution moots this case. If it doesn't, the problem still is involved where we believe in tribal government, and it takes an awfully long time to get that decided. And so the very nature of the process being so slow that the department, because it's unable to move any quicker, is essentially taking the situation, whether it's right or wrong, that the Kennedy group have and not have. Now assuming the case is not moot by the constitution, which I'll set aside for now, don't they have an argument that they don't have a voice in this because it takes so long to get their argument up? There's bound to be more elections. It takes forever to do these, to get through the department, and they're going to have elections. If we accept your rule, aren't we going to silence the tribe's ability to challenge, because there will always be more elections, and we can say, I'm sorry, it's moot. Your Honor, I don't think so, because if there is a systemic problem that will persist into the future, then there is the capable of repetition, yet evading review exception. And I think that that would come Well, why isn't that applicable in this case? I think that's the thrust of Judge Wallace's question. Right. Because in this case, that issue that was so intractable was resolved by the constitution I mean, there won't always be a constitutional amendment. In this case, the tribe was able to resolve that intractable problem. But the plaintiffs need to continue to participate in tribal government. They need to continue to try to persuade their fellow tribal members of the rightness of their position. They need to continue to run. They need to continue to challenge the subsequent elections if they think there is some systemic issue that persists, and in that way, keep the election alive. There was no challenge in November 2012, 2013, 2014. They just gave up. So that they are not, they are saying this is a tribal matter, but they have not continued to do what they need to do to persuade the tribal members. If I could give Mr. Berkland his time. You may do so, Counsel.  We'll go to Mr. Berkland. May it please the Court, James Berkland on behalf of the Timbush-Estochone Tribe and its elected council members. I'm pleased to say that the tribe's current chairman, George Golson, as well as two of the other existing tribal council members are here with us in court. Hello. And with that introduction, I'd like to highlight the two points that the tribe thinks are very important to convey to the court today. The first point goes to whether there's anything left to do and whether this case is moot. The tribe believes that their voice has been heard not once or twice, but six times since 2011 when the Echo Hawk decision is being challenged occurred. And the difficult question for the court is when you have a political factional dispute like this, how do you resolve it? We know that there were election politics going on in two different factions. And ultimately, if there's no other way to resolve these disputes, it has to come down to a referendum, the voice of the entire electorate. And that's what happened here. Once that voice was heard, the Echo Hawk decisions no longer have any impact. The voice of the tribe trumps everything that happened before that. So that's one point that the tribe wanted to make. The second point that they thought was very important here is regarding the enrollment dispute and the fruit of the poisonous tree argument. The Kennedy faction says, well, if something was wrong in 2011, everything else falls. But the problem with that argument is that in order to change the—that's based entirely on an attempt to disenroll 25 percent, over 25 percent of the tribe, the Kennedy faction, tried to disenroll people during a period of divided government. And when you don't have either faction recognized as being legitimate, no court nor should Interior allow disenrollments to occur. There's a simple rule that the Ninth Circuit could implement or any other court, which is if there's tribal election politics going on and there's two separate tribal groups, neither of them should be able to disenroll members during—when no one is recognized. And it would set—otherwise set a very negative precedent. There would be no meaning to sovereign immunity if all a tribal faction had to do was say, well, the existing council is not legitimate. And therefore, because we're contesting the legitimacy of the existing council, they don't get protection of sovereign immunity and their actions are not legitimate. There has to be a line drawn by the courts as to when you can challenge that. I think that line is drawn by Rule 19. Rule 19, the case that's very clear here for Rule 19 is McCaw versus Verity. And what McCaw—what the Ninth Circuit said in that case was if you have an APA challenge, you don't get a second bite at the apple if sovereign immunity is at play. If you're looking for backwards in time, not forward. If you're looking for retroactive relief, Rule 19 trumps and sovereign immunity principles apply. And that's what the McCaw court held. Isn't that—setting aside your sovereign immunity argument, which I understand, just by looking at it, it seems to me that if there is a disparate group that don't like what's going on, their voice should be heard. But it takes forever to get through the Department of the Interior. And I'm not being critical of the Department. It's just the way we know it works. You could have five or six elections between them. So how do you solve that problem other than saying that it's one of those things, its challenges is avoiding review, and we just ought to listen to them? Well, the answer is that sometimes it should avoid review by Interior in the courts. They can have their voice heard. The Kennedy faction, they're members in good standing of the tribe. They can run for council. They can seek to recall existing council members. They can attempt to amend the new constitution. And they can challenge a new constitution in court. So the principle that applies there is that the courts and Interior should do everything they can to support sovereignty and self-determination. If you have one tribal faction that's trying to get into control of the tribe, that's fine. The question is when should Interior and the courts get involved? And what the tribe strongly believes is they should not get involved during a period of darkness when the tribe is fractured and there's no political government being recognized on either side. That should not be enough to get them, in disenrolling people during that period of darkness, should not be enough. The government has to know where they send the checks. They want to get something together. And money is a big thing, the control of the money to the tribe. And there's always going to be disputes whether that money is properly used. And it becomes a big issue in the United States with the gambling and the rest of this. So there should be some way to solve this problem better than we have been able to do before, setting aside the mootness issue on the constitution, which I understand your position. Well there is a way to resolve it. And it was done in the eighth court. It was the Goodface case where essentially the court said that Interior, the Bureau of Indian Affairs, had to do something. If the government was divided, Interior had to recognize, at least on an interim basis, one side in order to hold an election and resolve the dispute. And that's actually what Echo Hawk did here. So Echo Hawk was right. He did his best, I guess, under the circumstance. The tribe would agree with that. And Echo Hawk, well, I only have 30 seconds, so the last thing I would say in closing is that if the court decides this is not moot, then clearly it impacts the tribe. This case is aimed at the tribe and its government. Even in the reply brief, the Kennedy faction says, if we win, the new constitution will fall. And they've said that it's a fruit of poisonous tree argument. The tribe, under Rule 19, should have, at the very least, have the right to be involved in that sort of case. So the district court did not abuse its discretion when it dismissed the case under Rule 19. Thank you. Very well. Thank you, counsel. Mr. Keohane, you have some return, some reserve time. Thank you, Your Honor. I would like to just reiterate that this is not a tribal case. This is not a matter of arguing between two tribal governments. The bishop counsel was only added to this case in order to attempt to escape the government's and Judge Englund's insistence that they were required parties in this case. We have no gripe with them. Our gripe is solely with the federal government, and this is solely a federal case under the APA. That's how you get into the Rule 19 problem, and you'd like to escape from that. Yes, we would like to escape from that, and we believe that the government has essentially conceded that the Rule 19 arguments below were incorrect. The — I think that it's — a couple of things I would like to clear up are that, you know, there was a statement that our clients were heard up to six times. I think that that's including a number of times when we were batted out of court simply on motions to dismiss. So we have not actually had the opportunity to brief the substantive matters of this underlying the Echo Hawk decision, the second Echo Hawk decision, the decisions that are encapsulated within that upon which it relies. And those — we're not challenging the tribal government, per se. We're not challenging tribal elections in 2011, 2012, 2013, the litany that we just heard. What we're challenging is the propriety of the federal government's decision to recognize the Bishop Council. The Bishop Council has no vested interest in the federal government complying with its own regulations in one way or the other. We also would like to point out that Council Sprague mentioned that, you know, it kept talking about the tribal council terms, but the — and also talked about us completely ignoring the general council meeting in August 2008. Well, Interior also decided to ignore the general council meeting in 2008 — in August 2008 because it was so facially corrupt and invalid. There was nobody in this case up until oral argument has argued that the August 2008 general council meeting should be part of this — part of this record. The January 2008 general council meeting, which was — which was recognized by Interior in 2008 is — right after it happened. It resolved the issues that Ms. Sprague brought up about the 2007 elections and the — you know, whether people had the opportunity to fill out their terms. Those were resolved under tribal law, consistent with Santa Clara Pueblo v. Martinez. This was a law-applying body, and this was the body that the Assistant Secretary Echohawk deliberately overturned as if he were a tribal Supreme Court. And he inserted himself into tribal law and decided that his dictionary definition was superior to a law passed by the membership of the tribe. If there are no further questions, thank you, Your Honors. Thank you, Counsel. The case just argued will be submitted for decision. Good arguments.
judges: Wallace, O'scannlain, Huff